**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

### UNITED STATE DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

SILVIA GARCIA,

          Plaintiff,

   v.

WPROMOTE LLC, a California entity d/b/a WPROMOTE.COM,

          Defendant.

Case No. 2:24-cv-07780-AB-MAA

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO SECOND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

[Pl.'s Objection to Gausepohl Decl. filed concurrently herewith]

Date:        December 6, 2024
Time:        10:00 a.m.
Courtroom:  7B
Judge:     Hon. André Birotte Jr.

# TABLE OF CONTENTS

I.    ARGUMENT ........................................................................................................1

    A.    The Court Has Article III Standing. ........................................................1

        1.    The FAC Has Sufficiently Alleged an Injury In Fact to Plaintiff's Privacy Interest, Which Harms Her Dignity. ......................................1

            a.    CIPA Was Established to Protect Plaintiff's Substantive Privacy Interest. ........................................................1

            b.    The Alleged CIPA Violations Alleged in This Case Actually Harm or Present a Material Risk of Harm to Plaintiff's Privacy Interest and Dignity. ........................................2

            c.    *Byars v. Sterling Jewelers, Inc.* Is Unpersuasive ......................3

            d.    *Lightoller v. Jetblue Airways Corp.* Is Unpersuasive ...............5

        2.    The FAC Has Sufficiently Alleged an Injury to Plaintiff's Dignity That Is "Fairly Traceable" to Defendant's Conduct. ...........................6

    B.    The FAC Plausibly Alleges that Defendant Violated Section 631(a) of the California Penal Code. ........................................................8

        1.    The Third Party Collection of Search Terms of Website Users Is Actionable Under Section 631(a) of the Penal Code. .........................8

        2.    The FAC Plausibly Alleges that the Wrongdoing at Issue Occurred During the Statute of Limitations. ....................................................10

        3.    The FAC Plausibly Alleges Lack of Consent, Which Is Premature for the Court to Decide. ........................................................11

            a.    Numerous Federal Court Decisions Reject Deciding the Issue of Consent at the Pleadings Stage ...........................................13

            b.    Defendant's Reliance Upon Extrinsic Evidence Is Improper. 14

        4.    Defendant Is Not Subject to a Party Exemption Under the First Clause of Section 631(a). ........................................................15

        5.    The FAC Plausibly Alleges that Defendant Violated the Fourth Clause. ........................................................17

a.    The FAC Plausibly Alleges Defendant's Knowledge and
Intent. ...................................................................................17

b.    The FAC Sufficiently Alleges the Combined Acts of the
Participants .............................................................................19

c.    The Court Should Follow the Decisions that Have Recognized
Sufficient Pleading of Liability Against Website
Owners/Operators Under the Fourth Clause of Section 631(a).
............................................................................................20

C.    The FAC Plausibly Alleges that Defendant Violated Section 638.51 of the
California Penal Code. ..............................................................................21

1.    An IP Address Constitutes a Consumer's Personal Information in
California ...................................................................................21

a.    Multiple Decisions Support Plaintiff's Position. ....................23

2.    Defendant's Consent Argument Is Without Merit. ...........................25

D.    Leave to Amend Should Be Granted ............................................................25

**CERTIFICATE OF COMPLIANCE** ...........................................................27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................11

*Backer ex rel. Freedman v. Shah*,
    788 F.3d 341 (2d Cir. 2015) ......................................................................8

*Baldain v. Am. Home Mortg. Servicing, Inc.*,
    2010 WL 56143 (E.D. Cal. Jan. 5, 2010) ...............................................10

*Bayer v. Neiman Marcus Group, Inc.*,
    861 F.3d 853 (9th Cir. 2017) .....................................................................8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................11

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ......................................................9

*Brown v. Google LLC*,
    525 F. Supp. 3d 1049 (N.D. Cal. 2021) (Koh, J.).........................11, 13

*Brown v. Google LLC*,
    685 F. Supp. 3d 909 (N.D. Cal. 2023) ......................................................9

*Byars v. Sterling Jewelers, Inc.*,
    2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, J.) ...............3, 4, 5

*Byars v. Sterling Jewelers, Inc.*,
    2023 WL 4195768 (C.D. Cal. May 18, 2023) ......................................4, 5

*Calhoun v. Google, LLC*,
    113 F.4th 1141 (9th Cir. 2024) ................................................................11

*Campbell v. Facebook Inc.*,
    77 F. Supp. 3d 836 (N.D. Cal. 2014) ......................................................12

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ..........................................................1, 2, 4

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
  867 F.3d 1093 (9th Cir. 2017) ..............................................................7

*Cousin v. Sharp Healthcare*,
  681 F. Supp. 3d 1117 (S.D. Cal. 2023) (Anello, J.) ...........................17

*D'Angelo v. FCA US LLC*,
  2024 WL 7006793 (S.D. Cal. Mar. 28, 2024) ................................8, 13

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ................................................................3

*Esparza v. Kohl's, Inc.*,
  - F. Supp. 3d. - , 2024 WL 1152732 (S.D. Cal. Mar. 18, 2024).........13

*Famolare, Inc. v. Edison Bros. Stores, Inc.*,
  525 F. Supp. 940 (E.D. Cal. 1981) .....................................................10

*Federal Election Comm'n v. Cruz*,
  142 S. Ct. 1638 (2022)..........................................................................7

*Garcia v. Build.com, Inc.*,
  2023 WL 4535531 (S.D. Cal. July 13, 2023) (Sabraw, C.J.) .......1, 5, 6

*Gerritsen v. Warner Bros. Enter. Inc.*,
  112 F. Supp. 3d 1011 (C.D. Cal. 2015) (Morrow, J.).........................14

*Gladstone v. Amazon Web Services, Inc.*,
  2024 WL 3276490, W.D. Wash (2024).........................................18, 19

*Greenley v. Kochava, Inc.*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................................... *passim*

*Griffin v. Department of Labor Federal Credit Union*,
  912 F.3d 649 (4th Cir. 2019) ................................................................8

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)...............................................................................7

*Heerde v. Learfield Communications, LLC*,
  2024 WL 3573874 (C.D. Cal. July 19, 2024) (Aenlle-Rocha, J.) ...8, 9

*Heiting v. Taro Pharms. USA, Inc.*,
  2024 WL 3738055 (C.D. Cal. July 31, 2024) (Peace Garnett, J.) .....20

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................... 3, 12, 13

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ....... 1, 2, 3, 9

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................12

*In re Google RTB Consumer Privacy Litig.*,
    606 F. Supp. 3d 935 (N.D. Cal. 2022) ........................................................21, 22

*In re Google*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ....................................12

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................23

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.)............................................9

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ............................................................................9

*James v. Walt Disney Co.*,
    701 F. Supp. 3d 942 (N.D. Cal. 2023) (Chen, J.) ............................................19

*Javier v. Assurance IQ, LLC*,
    2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ......................................................12

*Javier v. Assurance IQ, LLC*,
    2022 WL 1744107 (9th Cir. May 31, 2022)................................................11, 12

*Javier v. Assurance IQ, LLC*,
    649 F. Supp. 3d 891 (N.D. Cal. 2023) (Breyer, J.)...........................................14

*Langer v. Kiser*,
    57 F.4th 1085 (9th Cir. 2023) .........................................................................6, 7

*Licea v. American Eagle Outfitters, Inc.*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023) ......................................................13, 14

*Licea v. Cinmar, LLC*,
    659 F. Supp. 3d 1096 (C.D. Cal. Mar. 7, 2023) ......................................9, 10, 13

*Lightoller v. Jetblue Airways Corp.*,
  2023 WL 3963823 (S.D. Cal. June 12, 2023) (Huff, J.)...................................5, 6

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ........................................................................25

*Martin v. Sephora USA, Inc.*,
  2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.),
  *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.) ..........14

*Matera v. Google Inc.*,
  2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) (Koh, J.)....................................11

*McClung v. AddShopper, Inc.*,
  2024 WL 189006 (N.D. Cal Jan. 17, 2024)......................................................19

*Moody v. C2 Educational Systems Inc.*,
  2024 WL 3561367, C.D. Cal (2024) ...........................................................24, 25

*Naddeo v. Plestis Studios, Inc.*,
  2020 WL 10575048 (C.D. Cal. Nov. 17, 2020) (Olguin, J.) .............................14

*Osgood v. Main Street Marketing, LLC*,
  2017 WL 131829 (S.D. Cal. Jan. 13, 2017) .....................................................1, 2

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) ........................................................................1, 3

*Prescott v. Bayer Healthcare LLC*,
  2020 WL 4430958 (N.D. Cal. July 31, 2020) ...................................................23

*R.C. v. Walgreen Co.*,
  - F. Supp. 3d -, 2024 WL 2263395 (C.D. Cal. May 9, 2024) (Bernal, J.)........8, 9

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........................................... *passim*

*Shah v. Fandom, Inc.*,
  - F. Supp. 3d -, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ....................24, 25

*Shaver v. Independent Stave Co.*,
  350 F.3d 716 (8th Cir. 2003) ...........................................................................8

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................................1, 2, 6

*Stasi v. Inmediata Health Group Corp.*,
    501 F. Supp. 3d 898 (S.D. Cal. 2020)................................................................1

*Tourgeman v. Collins Financial Servs., Inc.*,
    755 F.3d 1109 (9th Cir. 2014) ...................................................................6, 7

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .........................................................................4, 5, 6

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
    489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).......................................3

*United States v. Staves*,
    383 F.3d 977 (9th Cir. 2004) ........................................................................12

*Valenzuela v. Keurig Green Mountain, Inc.*,
    674 F. Supp. 3d 751 (N.D. Cal. 2023) ..........................................................13

*Valenzuela v. The Kroger Co.*,
    2024 WL 1336959 (C.D. Cal. Mar. 28, 2024).................................................13

*Vizcarra v. Michaels Stores, Inc.*,
    710 F. Supp. 3d 718 (N.D. Cal. 2024) ...........................................................23

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ........................................................................6

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage*
    *Leasehold & Easement in the Cloverly Subterranean Geological*
    *Formation*,
    524 F.3d 1090 (9th Cir. 2008) .........................................................................8

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) (Holcomb, J.) ................................14, 20

**California Cases**

*Flanagan v. Flanagan*,
    27 Cal.4th 766 (2002) ...............................................................................3, 4

*Forest E. Olson, Inc. v. Superior Court*,
    63 Cal. App. 3d 188 (1976) .........................................................................16

*Friddle v. Epstein*,
    16 Cal. App. 4th 1649 (1993) ....................................................................2, 8

*King v. U.S. Bank National Ass'n,*
   53 Cal. App. 5th 675 (2020), *rev. denied,* No. S264308 (Cal. Nov. 10,
   2020) ........................................................................................................18

*People v. Beeman,*
   35 Cal. 3d 547 (1984) ...............................................................................17

*People v. Dole,*
   122 Cal. 486 (1898) ..................................................................................17

*People v. Durham,*
   70 Cal. 2d 171 (1969) ..................................................................... 17, 18, 19

*People v. Guzman,*
   11 Cal. App. 5th 184 (2017) ........................................................ 2, 3, 4, 5

*People v. McCoy,*
   25 Cal. 4th 1111 (2001) ...........................................................................19

*People v. Powell,*
   63 Cal. App. 5th 689 (2021) ...............................................................18, 19

*Ribas v. Clark,*
   38 Cal.3d 355 (1985) ...................................................................... *passim*

*Sanders v. Am. Bd. Co., Inc.,*
   20 Cal. 4th 907 (1999) .............................................................................12

*Schroder v. Auto Driveway Co.,*
   11 Cal. 3d 908 (1974) ...............................................................................18

*Shulman v. Group W Productions, Inc.,*
   18 Cal. 4th 200 (1998) .............................................................................12

*Smith v. LoanMe, Inc.,*
   11 Cal. 5th 183 (2021) .............................................................................10

*Warden v. Kahn,*
   99 Cal. App. 3d 805 (1979) ................................................................15, 16

**U.S. Constitution**

Article III.................................................................................... *passim*

**Federal Statutes**

ADA ...........................................................................................................7

Fair Credit Reporting Act ............................................................................1

Wiretap Act ..........................................................................................9, 23

**California Statutes**

Civil Code

    § 1798.100 *et seq.* ................................................................................21
    § 1798.100(a) ......................................................................................22
    § 1798.100(c) ......................................................................................22
    § 1798.105(a) ......................................................................................22
    § 1798.120(a) ......................................................................................22
    § 1798.140 ..........................................................................................22
    § 1798.140(v)(1)(A) ......................................................................21, 22
    Consumers Legal Remedies Act .........................................................23
    Consumer Privacy Act of 2018 .....................................................21, 22

Penal Code

    § 236.1 ................................................................................................16
    § 630 *et seq.* .......................................................................................1
    § 630 ...................................................................................................12
    § 631 ............................................................................................ *passim*
    § 631(a) ........................................................................................ *passim*
    § 631(a)[i] ............................................................................... 15, 16, 20
    § 631(a)[ii] .............................................................................. 15, 16, 20
    § 631(a)[iii] ........................................................................................20
    § 631(a)[iv] .............................................................................. 17, 20, 21
    § 632 ...................................................................................................16
    § 632.5 ................................................................................................16
    § 632.6 ................................................................................................16
    § 632.7 ..........................................................................................3, 4, 16
    § 633.5 ................................................................................................16
    § 638.50 .........................................................................................24, 25
    § 638.50(b) ..........................................................................................24
    § 638.51 ........................................................................................ *passim*
    § 638.52 .........................................................................................23, 25
    § 653m ................................................................................................16
    § 1546 *et seq.* ....................................................................................21

- ix -

§ 1546(d) ...................................................................................21
§ 1546(h) ...................................................................................21
§ 1546.1(a)(1) .............................................................................21
§ 1546.1(b) .................................................................................21
§ 1546.4(a) .................................................................................21
§ 13700 ......................................................................................16
California Electronic Communications Privacy Act ....................21
California Invasion of Privacy Act .................................... *passim*

**Federal Rules**

Rules of Civil Procedure
Rule 8(e) .....................................................................................10
Rule 12(b)(6) ................................................................. 11, 13, 14
Rule 15(a)(2) ..............................................................................25

Rules of Evidence
Rule 201(b)(1)-(2) ......................................................................14

**Other Authorities**

13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. (3d ed. June 2024 Update)
§ 3531.5 .......................................................................................7
n.61 .............................................................................................7
n.70 .............................................................................................7
n.73 .............................................................................................7

Cal. Jury Instructions—Criminal 3.01 Aiding and Abetting (Apr. 2024 Update) ......................................................................................18

Digest of A.B. 860 (As Amended, Apr. 20, 1967), by Assembly Speaker Jesse M. Unruh, at 1, Apr. 25, 1967, 1967 Regular Sess.) ...............................21

H. Lee Van Boven, Comment, *Electronic Surveillance in California: A Study in State Legislative Control*, 57 Cal. L. Rev. 1182 (1969) ......................20

Judicial Council Of California Criminal Jury Instruction 402, 403 (Apr. 2024 Update) ......................................................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    ARGUMENT

**A.    The Court Has Article III Standing.**

Defendant challenges the First Amended Complaint ("FAC") for lack of "standing" regarding the existence of a cognizable "injury."  (Def.'s Mem. at 12:22-15:25.)  Not so.

> **1.    The FAC Has Sufficiently Alleged an Injury In Fact to Plaintiff's Privacy Interest, Which Harms Her Dignity.**

The Ninth Circuit has "adopted a two-step approach to determine whether the violation of a statute causes a concrete injury."  *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019).  Such inquiry asks "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests."  *Id.* at 1270-71.

> **a.    CIPA Was Established to Protect Plaintiff's Substantive Privacy Interest.**

The Ninth Circuit has held that claims under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq*., protect concrete, substantive privacy interests, which is sufficient to confer standing.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ("*In re Facebook*"); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1116-19 (9th Cir. 2020); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *2-*4 (S.D. Cal. July 13, 2023) (Sabraw, C.J.); *Stasi v. Inmediata Health Group Corp.*, 501 F. Supp. 3d 898, 909 (S.D. Cal. 2020) ("the Ninth Circuit has found, in near uniformity, that intangible injuries based on alleged violations of privacy-related statutes are sufficiently concrete").

"[A]llegations of violations of Plaintiffs' statutory rights under CIPA, without more, constitute injury in fact because instead of a bare technical violation of a statute, as was the case under the FCRA considered in *Spokeo*[*, Inc. v. Robins*, 578 U.S. 330 (2016)], a CIPA violation 'involves much greater concrete and particularized harm ... a violation

- 1 -

of privacy rights', and therefore, a violation of CIPA is a 'violation of a procedural right granted by statute ... sufficient ... to constitute injury in fact.'" *Osgood v. Main Streat Marketing, LLC*, 2017 WL 131829, at \*7 (S.D. Cal. Jan. 13, 2017); *In re Facebook*, 956 F.3d at 598 (holding that CIPA codifies "a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing") (citing *Campbell*). In the instant action, a ***substantive*** violation of CIPA allegedly occurred, not a "bare procedural violation" "divorced from any concrete harm." *Spokeo*, 578 U.S. at 341.

**b.     The Alleged CIPA Violations Alleged in This Case Actually Harm or Present a Material Risk of Harm to Plaintiff's Privacy Interest and Dignity.**

The violations of sections 631(a) and 638.51 of the California Penal Code alleged in the FAC, if proven, actually harm or present a material risk of harm to Plaintiff's privacy interest and dignity. Plaintiff's dignitary interest is intended to be protected by the CIPA statutes at issue here. *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("***Any invasion of privacy involves an affront to human dignity***") (emphasis added).

Although Defendant implies that section 631(a) imposes a confidential information requirement, Defendant is wrong. Section 631 of the California Penal Code does not impose any confidentiality requirement. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at \*3 n.3 (N.D. Cal. Oct. 23, 2019) (citing *People v. Guzman*, 11 Cal. App. 5th 184, 192 n.7 (2017)). As held by the California Supreme Court decision in *Ribas v. Clark*, 38 Cal.3d 355 (1985), the fundamental harm that Plaintiff and all other similarly situated individuals experienced is having an "unannounced second auditor" intercept her search bar communication. *Ribas*, 38 Cal.3d at 360-61. Thus, whether or not Plaintiff communicated confidential information such as her social security number, date of birth, or similar types of sensitive information about Plaintiff is irrelevant to section 631(a). What does matter to such claim is having an "unannounced second auditor" intercept Plaintiff's search bar communication without her consent. That is highly offensive and, thus, conduct that the Legislature made actionable under California law.

"To say that a 'mere' privacy invasion is not capable of inflicting an 'actual injury' serious enough to warrant the attention of the federal courts is to disregard the importance of privacy in our society, not to mention the historic role of the federal judiciary in protecting it." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 786 (N.D. Cal. 2019).

As explained by the Ninth Circuit:

"'[V]iolations of the right to privacy have long been actionable at common law.' *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). A right to privacy 'encompass[es] the individual's control of information concerning his or her person.' *Eichenberger*, 876 F.3d at 983 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989))."

*In re Facebook*, 956 F.3d at 598.

### c.    *Byars v. Sterling Jewelers, Inc.* Is Unpersuasive.

Defendant's reliance upon *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, J.) ("*Sterling Jewelers I*"), is misplaced. That decision found that an individual lacked Article III standing to sue based upon both a facial and factual challenge to the plaintiff's constitutional standing to sue for violations of Penal Code §§ 631(a) and 632.7. *Id.* at *2-*4. In support of its facial challenge analysis, *Sterling Jewelers I* stated in relevant part, "Here, in contrast, Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy." *Id.* at *3. In making such conclusion, however, the court ignored the fact that the plaintiff therein had argued in opposing the defendant's motion to dismiss predicated in part upon lack of Article III standing that "sections 631 and 632.7 do not impose any confidentiality requirement." (Doc. 33 at 2:5-8 in No. 5:22-cv-01456-SB-SP (C.D. Cal. Feb. 17, 2023)) (citing *Revitch*, 2019 WL 5485330, at *3 n.3 (citing *Guzman*, 11 Cal. App. 5th at 192 n.7); *Flanagan v.*

*Flanagan*, 27 Cal.4th 766, 771 n.2 (2002)).

Significantly, the plaintiff in *Sterling Jewelers I* subsequently moved for reconsideration of such order, and pointed out that the plaintiff had previously argued that sections 631 and 632.7 do not impose any confidentiality requirement, and once again cited *Revitch*, *Guzman*, and *Flanagan* in support. (Doc. 46 at 8:13-18 in No. 5:22-cv-01456-SB-SP (C.D. Cal. Apr. 20, 2023).) In addition, the plaintiff cited *Campbell*, 951 F.3d at 1118-19, which held that a statutory violation of CIPA would satisfy the concrete injury requirement for Article III standing. (Doc. 46 at 9:1-3 in No. 5:22-cv-01456-SB-SP (C.D. Cal. Apr. 20, 2023).)

Upon review of such motion for reconsideration, the court effectively abandoned its reliance upon the defendant's facial challenge and instead relied solely upon the defendant's factual challenge in a subsequent order that was limited to its unique facts.[1] *Byars v. Sterling Jewelers, Inc.*, 2023 WL 4195768, at *4 (C.D. Cal. May 18, 2023) ("*Sterling Jewelers II*") ("the Court need not decide whether *Campbell* states the absolute rule advanced by Plaintiff or whether such a rule survives *TransUnion*") ("Because Plaintiff has not shown that dismissal based on Zale's factual challenge constituted manifest error of law or fact, it is immaterial whether Zale's facial challenge presented an independent basis for dismissal."). Thus, Defendant's implicit argument that *Sterling Jewelers I* correctly decided the facial challenge to standing is misleading because the Court was unwilling to stand by such decision in *Sterling Jewelers II*.

---

[1] The plaintiff therein had failed to timely file a declaration averring that she visited the defendant's chat feature as alleged in the operative pleading due to the plaintiff's confusion about whether the Court allowed such filing to occur based on the Court's remarks about the exchange of the respective parties' declarations during a prior hearing. (Doc. 44 at 14:1-5; Doc. 46 at 1:19-2:5; 2 n.1 in No. 5:22-cv-01456-SB-SP (C.D. Cal. Apr. 20, 2023).) The plaintiff's declaration existed even before the defendant moved to dismiss, and was served on the defendant's counsel before such motion was even filed, but such declaration was not timely filed as a result of the confusion. (Doc. 46-1 ¶ 2 & Ex. A in No. 5:22-cv-01456-SB-SP (C.D. Cal. Apr. 20, 2023).) Thus, the filing error in *Sterling Jewelers* is unlikely to be repeated in other cases.

Notably, unlike the circumstances at issue in *Sterling Jewelers I*, Defendant has not made a factual challenge to whether Plaintiff visited and used Defendant's Website. Thus, Defendant's challenge to Plaintiff's standing should be construed as a facial challenge only.

### d. *Lightoller v. Jetblue Airways Corp.* Is Unpersuasive.

Defendant's reliance upon *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023) (Huff, J.), is misplaced. Although *Lightoller* cited *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), in support, *id.* at *3, *Build.com* recently held that "*TransUnion* does not undermine the reasoning in [prior cases finding standing in CIPA cases]." *Build.com*, 2023 WL 4535531, at *3.

Second, *Lightoller* seems to imply that CIPA claims must implicate the plaintiff's "personal information" in order to be actionable, but this is wrong as a matter of law. As mentioned above, section 631 does not impose any confidentiality requirement. *Revitch*, 2019 WL 5485330, at *3 n.3 (citing *Guzman*, 11 Cal. App. 5th at 192 n.7). Under *Lightoller*'s extremely narrow view of a concrete injury, a plaintiff suing under CIPA would have to allege the interception of "personal information" or confidential information even though the CIPA statutes, themselves, impose no such requirement. Thus, *Lightoller* has taken an anomalous position that threatens to make CIPA claims not available to be litigated in federal court for a large swath of cases.

Third, although *Lightoller* cited *Sterling Jewelers I*, *Lightoller* did not cite to *Sterling Jewelers II*, the latter of which, as mentioned above, effectively disavowed relying upon the facial standing analysis because the plaintiff therein pointed out that the CIPA claims at issue were based on non-confidential information, and instead relied solely on the factual standing analysis, *i.e.*, the plaintiff's failure to file a declaration averring that she visited the defendant's website at issue. *Sterling Jewelers II*, 2023 WL 4195768, at *4.

Finally, although *Lightoller*'s analysis briefly mentions "intrusion upon seclusion" as a harm traditionally recognized as providing a basis for lawsuits in American courts, *Lightoller*, 2023 WL 3963823, at *4 (citing *TransUnion*), it avoids any analysis of whether "intrusion upon seclusion" is closely analogous, let alone, analogous at all to a CIPA claims under sections 631(a) and 638.51. An intangible harm can constitute a concrete injury if it bears "a close relationship to harms traditionally recognized as

providing a basis for lawsuits in American courts," like "reputational harms, disclosure of private information, ***and intrusion upon seclusion***" or those "specified by the Constitution itself." *TransUnion*, 141 S. Ct. at 2204 (emphasis added); *see also Spokeo*, 578 U.S. at 340–41.  As mentioned above, the fundamental harm that Plaintiff and all other similarly situated individuals experienced in violation of section 631(a) is having an "unannounced second auditor" intercept her search term communications on the Website's search bar.  *Ribas*, 38 Cal.3d at 360-61.  How is that not closely analogous to an "intrusion upon seclusion" common law claim?  Indeed, *Build.com* recently held that the "privacy injury" alleged by a plaintiff suing under section 631(a) "is sufficiently similar to a 'historical or common-law analogue.'" *Build.com*, 2023 WL 4535531, at *4 (quoting *TransUnion*).  In support, the Court cited the Ninth Circuit's decision in *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022), which held that "traditional claims for 'invasion of privacy, ***intrusion upon seclusion***, and nuisance'" are "evidence of a common-law analog to privacy violations." *Id.* at 1118 (emphasis added).  By failing to address whether Plaintiff's claims under section 631(a) and 638.51 are "closely analogous" to a common law intrusion upon seclusion claim, *Lightoller* is not persuasive.

**2.    The FAC Has Sufficiently Alleged an Injury to Plaintiff's Dignity That Is "Fairly Traceable" to Defendant's Conduct.**

Although Defendant has deliberately refrained from challenging the "fairly traceable" element of Article III standing apparently to avoid running afoul of the Ninth Circuit's recent decision in *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023), holding that the fact that the plaintiff is a "serial litigant" "has no place in our standing analysis," *id.*, Plaintiff briefly addresses such topic.

As the Ninth Circuit has explained, "[w]hen the injury in fact is the violation of a statutory right that we inferred from the existence of a private cause of action, causation and redressability'—the two other elements of standing—'will usually be satisfied.'" *Tourgeman v. Collins Financial Servs., Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014) (citation omitted).  "The Ninth Circuit has instructed that the 'article III causation threshold' is

1    *'less rigorous' than proximate causation*."  *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d
2    1024, 1040 (S.D. Cal. 2023) (emphasis added).  Thus, the causation threshold for Article
3    III standing purposes is quite low and modest.

4        Although Defendant argues that Plaintiff suffered a self-inflicted injury, a well-
5    recognized treatise on federal practice has explained, "Self-inflicted injury may seem a
6    suspicious basis for standing.  It is clear, however, that no rigid lines are drawn on this
7    basis." 13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. &
8    Proc. Juris. § 3531.5 (3d ed. June 2024 Update) ("Wright, Miller & Cooper").  That
9    treatise further explained, "Standing is not defeated merely because the plaintiff has in
10   some sense contributed to his own injury." *Id.* § 3531.5 & n.70.  "A self-inflicted injury
11   defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break
12   the causal chain***." *Id.* at n.70 (emphasis added) (citation omitted); *Id.* at n.73 ("Standing
13   is defeated only if it is concluded that the injury is ***so completely due to the plaintiff's
14   own fault as to break the causal chain***.") (emphasis added).

15       Notably, such treatise cited in support as illustrative the U.S. Supreme Court's
16   landmark decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982).
17   Wright, Miller & Cooper, *supra*, § 3531.5 & n.61.  *Havens* continues to be recognized as
18   supporting tester standing even by the U.S. Supreme Court itself.  *See Federal Election
19   Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (citing *Havens*) (rejecting the recognition
20   of an exception to traceability for injuries that a party purposely incurs).

21       Also, the Ninth Circuit has repeatedly cited *Havens*.  *Langer*, 57 F.4th at 1094; *Civil
22   Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-
23   02 (9th Cir. 2017) ("*CREEC*"); *Tourgeman*, 755 F.3d at 1115-16.  As mentioned above,
24   in *Langer*, the Ninth Circuit recently held that the fact that the plaintiff is a "serial litigant"
25   "has no place in our standing analysis."  *Langer*, 57 F.4th at 1094; *CREEC*, 867 F.3d at
26   1096 (holding that "a plaintiff has constitutional standing" even if "her only motivation
27   for visiting a facility is to test it for ADA compliance"); *id.* at 1102.

28       The mere fact that *Havens*, *Langer*, and *CREEC* are all discrimination cases is a

- 7 -

distinction without a difference because the ***dignitary*** harm in civil rights cases,[2] is the same type of intangible harm that is at issue in all CIPA cases. *Friddle*, 16 Cal. App. 4th at 1660-61. As was the case in *Bayer*, *Griffin*, and *Shaver*, Plaintiff's dignitary interest is intended to be protected by the statutes at issue here, namely, CIPA.

Here, the injury to Plaintiff's dignity was "not solely attributable to" "[P]laintiff's actions." Wright, Miller & Cooper, *supra*, at n.70 (citing *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015)). Rather, the FAC makes it clear that Defendant's and its third-party spyware developers' unlawful conduct contributed to causing Plaintiff's intangible injury either solely or almost entirely on their own.

Finally, Defendant ignores that Defendant's argument about Plaintiff being a tester is intertwined with the merits of Plaintiff's CIPA claim. As the Ninth Circuit has held, "As a general rule, when the question of jurisdiction and the merits of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) (internal quotations and alterations omitted), *quoted in D'Angelo v. FCA US LLC*, 2024 WL 7006793, at *7 (S.D. Cal. Mar. 28, 2024). The Court is bound to follow *Williston*.

**B.    The FAC Plausibly Alleges that Defendant Violated Section 631(a) of the California Penal Code.**

**1.    The Third Party Collection of Search Terms of Website Users Is Actionable Under Section 631(a) of the Penal Code.**

Multiple federal courts have recognized that the unlawful collection of search terms of website users by third parties who are not the owners or operators of the website violates section 631(a) of the California Penal Code. *Heerde v. Learfield Communications, LLC*, 2024 WL 3573874, at *4-*8 (C.D. Cal. July 19, 2024) (Aenlle-Rocha, J.); *R.C. v. Walgreen Co.*, - F. Supp. 3d -, 2024 WL 2263395, at *16 (C.D. Cal.

---

[2] *See Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 874 (9th Cir. 2017); *Griffin v. Department of Labor Federal Credit Union*, 912 F.3d 649, 653-54 (4th Cir. 2019); *Shaver v. Independent Stave Co.*, 350 F.3d 716, 724 (8th Cir. 2003).

May 9, 2024) (Bernal, J.) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA") (citing *In re Facebook*, 956 F.3d at 605).

Federal courts have recognized that a consumer has a reasonable expectation of privacy in search terms used in search bars on websites. *Heerde*, 2024 WL 3573874, at \*10 ("Here, Plaintiffs allege plausibly a reasonable expectation of privacy in their search terms. As pleaded, a reasonable factfinder could determine the Search Terms were sensitive and confidential because they revealed the specific content Plaintiffs consumed.") (citing *In re Facebook*, 956 F.3d at 603 and *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("Ninth Circuit law indicates [] users [have a reasonable expectation of privacy] over URLs that disclose either unique search terms or the particular document within a website that a person views."); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014); *In re Facebook*, 956 F.3d at 605.

The Ninth Circuit has recognized that the federal "Wiretap Act's legislative history evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *In re Facebook*, 956 F.3d at 608. Numerous federal court decisions construe statutory language in CIPA consistent with the Wiretap Act's construction. *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. Mar. 7, 2023) ("[C]ourts have looked at cases analyzing the Wiretap Act as informative of section 631(a)."); *In re Vizio*, *Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (Staton, J.). "'The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.'" *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citation omitted). The California Supreme Court, interpreting section 631(a) of the California Penal Code, held that, "While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985).

"As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Id.* at 361 (citation omitted), *quoted in Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021). "Partly because of this factor, the [CIPA] has been read to require the assent of all parties to a communication before another may listen." *Ribas*, 38 Cal. 3d at 361. The Legislature's express objective in enacting section 631 is to protect a person's communications "from a situation where the other person on the other end of the line permits an outsider" to monitor the communication. *Id.* at 363 (citation omitted).

**2.    The FAC Plausibly Alleges that the Wrongdoing at Issue Occurred During the Statute of Limitations.**

The FAC alleges, "Within the statute of limitations period, Plaintiff visited the Website via an Internet-connected computer." (FAC ¶ 35.) Defendant's contention that the FAC should be dismissed for failing to identify the precise date of Plaintiff's visit to the Website, (Def.'s Mem. at 16:1-20), is wrong. *See Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023) (Fitzgerald, J.) ("courts in this circuit have refused to dismiss claims where plaintiffs adequately provide notice of the general time-period at issue") (denying motion to dismiss based on same argument against same allegations in operative pleading) (citing *Baldain v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 56143, at *5 (E.D. Cal. Jan. 5, 2010) ("complaint suffices where it puts defendant 'on notice of the time frame in question'") ("*I have previously explained that the rules do not require a complaint to specify the exact date of alleged misconduct*, and that '*[t]his is exactly the sort of information which should be obtained through the discovery process*.'") (emphasis added) (citing *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981) ("In the present case the plaintiff essentially requests that the defendant reveal the exact dates of its alleged misconduct. Such specificity in pleading is not required by Federal Rule of Civil Procedure 8(e). This is exactly the sort of information which should be obtained through the discovery process."))).

### 3.    The FAC Plausibly Alleges Lack of Consent, Which Is Premature for the Court to Decide.

Defendant's argument that the FAC fails to sufficiently allege lack of consent, (Def.'s Mem. at 9:24-11:27), is without merit for numerous reasons.  First, consent is a defense to privacy-related claims, and, as the party seeking the benefit of the exception, it is the defendant's burden to prove consent.  *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) (Koh, J.) ("Consent is a defense to Plaintiffs' claims.") (citations omitted).  "'[A]s 'the party seeking the benefit of the exception,' it is [defendant's] burden to prove consent.'" *Id.* (quoting *Matera v. Google Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (Koh, J.)).

Second, assuming *arguendo* that Plaintiff must allege lack of consent in the FAC, it does so.  (FAC ¶¶ 20, 24, 39, 42-44, 83.)  Thus, the lack of Plaintiff's consent to Defendant's wrongdoing has been affirmatively alleged, which the Court is required to take as true for purposes of deciding the instant Motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").

Notably, in *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), the Ninth Circuit interpreted section 631(a) of the California Penal Code as requiring "prior consent," and predicted that the California Supreme Court would interpret such statute in such manner.  *Id.* at *2 ("Based on these statements by the California Supreme Court, we conclude that the California Supreme Court would interpret Section 631(a) to require the ***prior consent*** of all parties to a communication.") (emphasis added).  Although the Ninth Circuit in *Javier* was interpreting section 631(a), the supportive "statements" of the California Supreme Court cited by *Javier* included the emphasis that "all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory

1  purposes of CIPA." *Javier*, *id.* at *2 (citing *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985)

2  (citing Cal. Penal Code § 630)).

3  　　　Third, "'[c]onsent is … generally limited to the specific conduct authorized.'"

4  *Greenley*, 684 F. Supp. 3d at 1048 (quoting *Javier v. Assurance IQ, LLC*, 2021 WL

5  940319, at *2 (N.D. Cal. Mar. 9, 2021)); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836,

6  847 (N.D. Cal. 2014) (no consent to data being used for targeted advertising where users

7  consented to its use for "data analysis"); *In re Google Assistant Privacy Litig.*, 457 F.

8  Supp. 3d 797, 824 (N.D. Cal. 2020) (consent to data collection does not extend to data

9  disclosure).  As the California Supreme Court has explained:

10  　　　"[W]e adhere to the view suggested in *Shulman[ v. Group W Productions, Inc.*, 18

11  　　　Cal. 4th 200 (1998)]: privacy … is not a binary, all-or-nothing characteristic.  There

12  　　　are degrees and nuances to societal recognition of our expectations of privacy: the

13  　　　fact that the privacy one expects in a given setting is not complete or absolute does

14  　　　not render the expectation unreasonable as a matter of law."

15  *Sanders v. Am. Bd. Co., Inc.*, 20 Cal. 4th 907, 915-16 (1999) (recognizing an "expectation

16  of limited privacy"); *Javier*, 2021 WL 940319, at *2 ("[C]onsent 'is not an all-or-nothing

17  proposition.'") (quoting *In re Google*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26,

18  2013) (Koh, J.)).

19  　　　"Consent is frequently evaluated using principles of contract to determine "whether

20  the user 'agreed' " to the specific use or collection." *Javier*, 2021 WL 940319, at *2

21  (quoting *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767,

22  789 (N.D. Cal. 2019)).  "Courts have cautioned that implied consent applies only in a

23  narrow set of cases." *In re Google*, 2013 WL 5423918, at *12.  "The critical question

24  with respect to implied consent is whether the parties whose communications were

25  intercepted had ***adequate notice*** of the interception." *Id.* (emphasis added).  "That the

26  person communicating knows that the interceptor has the *capacity* to monitor the

27  communication is insufficient to establish implied consent." *Id.* (emphasis in original);

28  *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("foreseeability of monitoring

- 12 -

is insufficient to infer consent"). "The disclosures must have only one plausible interpretation for a finding of consent." *Brown*, 525 F. Supp. 3d at 1063. "[I]f a reasonable … user could have plausibly interpreted the contract language as not disclosing that [the defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)." *Id.* (quoting *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 794).

> **a.     Numerous Federal Court Decisions Reject Deciding the Issue of Consent at the Pleadings Stage.**

The Court should follow the numerous similar federal court decisions that have rejected deciding the issue of consent as a matter of law at the pleadings stage in privacy-related actions. *See, e.g.*, *Valenzuela v. The Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) ("Kroger argues that Valenzuela consented to recording because she was a 'tester'—i.e., someone who used the Kroger website anticipating that her conversation would unlawfully be recorded—relying on three complaints she filed the same month she used the Kroger website. Of course, this establishes nothing more than that Valenzuela accessed the website believing it might allow unlawful third party eavesdropping, which hardly amounts to 'implied consent' for unlawful eavesdropping to occur as a matter of law.") (internal citation omitted); *Esparza v. Kohl's, Inc.*, - F. Supp. 3d. - , 2024 WL 1152732, at *3 (S.D. Cal. Mar. 18, 2024) ("Plaintiff meets his burden to plead lack of consent….Plaintiff alleges neither he nor class members expressly or impliedly consented to any of Defendant's actions when they used the Website to chat with a Kohl's customer service representative. That is sufficient at this stage.") (internal citation omitted); *D'Angelo v. FCA US LLC*, 2024 WL 7006793, at *7; *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756-57 (N.D. Cal. 2023); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1106 ("For purposes of Rule 12(b)(6), Plaintiffs sufficiently plead that they did not consent to the recording of their conversations with Defendant."); *Licea v. American Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1081 (C.D.

Cal. 2023) (same); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at \*13 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.), *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.) ("Defendant's fact-based defense of implied or express consent, which is not apparent on the face of the complaint, is unavailing at the motion to dismiss stage."); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (Breyer, J.) ("implied consent does not provide a basis for dismissal of the Section 631 claim … at this stage"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080-81 (C.D. Cal. 2021) (Holcomb, J.) (finding that plaintiff sufficiently pleaded lack of consent to third party software provider's participation in website conversation on Rule 12(b)(6) motion despite defendant website operator's reliance on its online privacy policy).

   **b.    Defendant's Reliance Upon Extrinsic Evidence Is Improper.**

Defendant's reliance upon extrinsic evidence is improper to decide the instant Motion as the Court should not take judicial notice of such alleged evidence. *See Gerritsen v. Warner Bros. Enter. Inc.*, 112 F. Supp. 3d 1011, 1030-31 (C.D. Cal. 2015) (Morrow, J.) ("the court declines to take judicial notice of information published on private websites") (citing cases). "Facts subject to judicial notice are those which are either 'generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Naddeo v. Plestis Studios, Inc.*, 2020 WL 10575048, at \*2 (C.D. Cal. Nov. 17, 2020) (Olguin, J.) (citing Fed. R. Evid. 201(b)(1)-(2)). The Gausepohl Declaration and Exhibits 1-4 attached thereto are not "generally known within the trial court's territorial jurisdiction," nor can such webpage screenshots or webpage contents "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Moreover, assuming *arguendo* that the Court considers such alleged evidence, Defendant conveniently ignores paragraphs 59 and 60 of the FAC, which allege in relevant part:

"59.   Plaintiff's investigation of the Website via a computer expert has determined that visitor data is harvested and shared with third-party services *immediately upon webpage loading, preceding any opportunity for visitors to consent to or decline the Website's privacy policy or cookie banner*.

60.    In addition, *the Website is designed so that a visitor can navigate through the various webpages of the Website without having to make any cookie-related preferences.  In other words, a visitor to the Website can read the content of various webpages without having to make any cookie-related preferences.*"

(FAC ¶¶ 59-60) (emphasis added).   Thus, Defendant's argument that "[t]he Complaint contains no mention of WPromote's banner advisory on cookies," (Def.'s Mem. at 7:5-6; *id.* at 10:10-18; 10:19), is simply wrong.   Defendant's cookie banner is expressly mentioned in paragraph 59 and implicitly mentioned in paragraph 60.

In other words, Plaintiff was able to navigate through the Website's webpages and use the Website's search function without having to make any cookie-related preferences, contrary to Defendant's inference to the contrary.   Indeed, the Gausepohl Declaration effectively concedes this point by averring, "This banner will follow any user of the website ("user or browser") wherever they browse on the WPromote website…." (Gausepohl Decl. ¶ 4; Doc. 18-1.)  Similarly, the Gausepohl Declaration avers, "Browsers cannot access the WPromote website search function without seeing the banner." *Id.* ¶ 8. If it was technically impossible to use the search function without making a cookie-related preference from the cookie banner, then surely such Declaration would have made such averment.  Its omission speaks volumes.

**4.    Defendant Is Not Subject to a Party Exemption Under the First Clause of Section 631(a).**

Defendant is not subject to a party exemption under the first clause of section 631(a) of the Penal Code.  Although Plaintiff acknowledges that California appellate authority has held that "[t]he second clause [of section 631(a)] clearly has no application to participant recording," *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 n.3 (1979), because the

- 15 -

second clause has been interpreted as applicable to eavesdropping, which, by definition, requires the interception of a communication by a third party, Plaintiff submits that the first clause of section 631(a) is not subject to such party exemption because a party to a communication can wiretap its own communication. Indeed, section 633.5 of the Penal Code supports Plaintiff's interpretation.[3] In *Forest E. Olson, Inc. v. Superior Court*, 63 Cal. App. 3d 188 (1976), the Court of Appeal, interpreting the then-applicable version of section 633.5, which is materially identical to the current version for purposes of the instant Motion, held: "Clearly there would be no need for this exception were it not the rule under ***sections 631*** and 632 that ***a participant to a telephonic communication cannot record that communication without the knowledge of the other participant or participants***." *Id.* at 192 (emphasis added). In other words, *Forest E. Olson, Inc.* construed section 631 as imposing liability for participant recording of telephonic communications. In *Warden*, the Court of Appeal cited with approval *Forest E. Olson, Inc.*'s analysis of section 633.5:

> "As the appellate court noted in *Forest E. Olson*, *supra*, the presence of section 633.5 in the Invasion of Privacy Act is inexplicable except on the assumption that the Legislature intended at least some portion of the Act to apply to participant recording."

*Warden*, 99 Cal. App. 3d at 813 (citing *Forest E. Olson*, 63 Cal. App. 3d at 192).

The only reasonable way to construe *Warden*, which held that the second clause of section 631(a) is subject to a party exemption, is that the first clause is not subject to such party exemption.

---

[3] "***Sections 631***, 632, 632.5, 632.6, and 632.7 do not prohibit one party to a confidential communication from recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion, kidnapping, bribery, any felony involving violence against the person, including, but not limited to, human trafficking, as defined in Section 236.1, or a violation of Section 653m, or domestic violence as defined in Section 13700. ***Sections 631***, 632, 632.5, 632.6, and 632.7 do not render any evidence so obtained inadmissible in a prosecution for extortion, kidnapping, bribery, any felony involving violence against the person, including, but not limited to, human trafficking, as defined in Section 236.1, a violation of Section 653m, or domestic violence as defined in Section 13700, or any crime in connection therewith. (Cal. Penal Code § 633.5) (emphasis added).

- 16 -

**5.      The FAC Plausibly Alleges that Defendant Violated the Fourth Clause.**

Defendant is liable for violating the fourth clause of section 631(a), which omits the word "abet" so the statute does not impose an "aid and abet" requirement under California criminal law. *People v. Dole*, 122 Cal. 486, 492 (1898) ("The word 'aid' does not imply guilty knowledge of felonious intent, whereas the definition of the word 'abet' includes ***knowledge*** of the wrongful purpose of the perpetrator, and counsel and encouragement in the crime.") (emphasis added); *People v. Beeman*, 35 Cal. 3d 547, 560 (1984) ("the word 'abet,' which encompasses the intent required by law, ... is arcane and its full import unlikely to be recognized by modern jurors.... '[A]bet' means to encourage or facilitate, and ***implicitly to harbor an intent to further the crime encouraged***.") (emphasis added). *Dole* and *Beeman* irrefutably demonstrate that the term "aids" reflects conduct that does not reflect the criminal state of mind, which is reflected by the term "abet." ***This Court is bound to follow the foregoing California published appellate authority***.

Indeed, in *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) (Anello, J.), a federal district court recently stated:

> "Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause.  Defendant provides no case law requiring the Court to analyze 'aids, agrees with, employs, or conspires with' as solely 'aiding and abetting.'"

*Id.* at 1130.

**a.      The FAC Plausibly Alleges Defendant's Knowledge and Intent.**

Assuming *arguendo* that Plaintiff must plead Defendant's knowledge and intent for aiding and abetting liability, the FAC does so.  (FAC ¶¶ 14-50.)

"*[P]roof* of the aider and abettor's intent may be made by way of an inference from her volitional acts with knowledge of their probable consequences." *Beeman*, 35 Cal. 3d at 559-60 (emphasis in original); *People v. Durham*, 70 Cal. 2d 171, 181 (1969) ("[T]he aider and abettor in a proper case is not only guilty of the particular crime that to his

- 17 -

knowledge his confederates are contemplating committing, but ***he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged***. ***Whether the act committed was the natural and probable consequence of the act encouraged and the extent of defendant's knowledge are questions of fact for the jury***.") (emphasis added); Judicial Council Of California Criminal Jury Instruction 402, 403 (Apr. 2024 Update). "'[I]ntent,' in the law of torts, denotes not only those results the actor desires, but also those consequences which he [or she] knows are substantially certain to result from his [or her] conduct.'" *King v. U.S. Bank National Ass'n*, 53 Cal. App. 5th 675, 712 (2020), *rev. denied,* No. S264308 (Cal. Nov. 10, 2020) (quoting *Schroder v. Auto Driveway Co.*, 11 Cal. 3d 908, 922 (1974)).

In *People v. Powell*, 63 Cal. App. 5th 689 (2021), the Court of Appeal stated, in addressing criminal aiding and abetting liability under the natural and probable consequences doctrine in the context of an aider and abettor of implied malice murder, "relative to the aider and abettor's intent, he or she need only intend the commission of the perpetrator's *act*, the natural and probable consequences of which are dangerous to human life, intentionally aid in the commission of that *act* and do so with conscious disregard for human life." *Id.* at 714 (emphasis in original). In other words, the aider and abettor of a certain crime need not know that the perpetrator intended to commit ***the crime***. *Id.* This is precisely why a leading California criminal jury instruction on aiding and abetting (not limited to implied malice murder) was revised to take *Powell* into account. (Cal. Jury Instructions—Criminal 3.01 Aiding and Abetting (Apr. 2024 Update).

The FAC's allegations that Defendant's third party search bar data collectors harvested user data on Defendant's Website make it plausible that Defendant knew such conduct by its search bar providers would occur by allowing analytics providers like its search bar providers to make use of such data. (FAC ¶¶ 24-26.)

The software in the Website is designed for the purpose of intercepting and recording search bar communications with visitors and de-anonymizing and tracking visitors of the Website. The software design is not a mistake. *See Gladstone*, 2024 WL

3276490, at *11 ("The SAC alleges that Amazon Connect is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities."). Defendant knew this before agreeing to install and allow such third party spyware software to exist and operate on its Website.

As explained in *McClung v. AddShopper, Inc.*, 2024 WL 189006 (N.D. Cal Jan. 17, 2024), "the scheme [to misappropriate user data from retailer websites] cannot exist without the participation of the retailers, and ***the retailers were aware that their participation would cause these intrusions***." *Id.* at *3 (emphasis added); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) (Chen, J.) ("As [Plaintiffs] maintain, it can reasonably be inferred that ***Disney entered into a contractual arrangement with Oracle*** under which Oracle would collect information from ESPN.com website users *so that Disney could market to and attract new customers*.") (first emphasis added; second emphasis in original).

The FAC sufficiently alleges facts cognizable under the well-established natural and probable consequences doctrine applicable in aiding and abetting criminal liability. As mentioned above, "***Whether the act committed was the natural and probable consequence of the act encouraged and the extent of defendant's knowledge are questions of fact for the jury***." *Durham*, 70 Cal. 2d at 181 (emphasis added).

### b. The FAC Sufficiently Alleges the Combined Acts of the Participants.

"Guilt as an aider and abettor is guilt 'based on a ***combination*** of the direct perpetrator's acts ***and*** the aider and abettor's *own* acts and *own* mental state." *People v. Powell*, 63 Cal. App. 5th at 710 (quoting *People v. McCoy*, 25 Cal. 4th 1111, 1117 (2001) (first and second emphasis added; third and fourth emphasis in original)). "As the court in *McCoy* made clear, direct aiding and abetting is based on ***the combined actus reus of the participants***…." *Powell*, 63 Cal. App. 5th at 712 (emphasis added).

The FAC has sufficiently set forth the combined actus reus of all of the known participants in the violation of section 631(a) including both Defendant's search bar data

1  collectors and Defendant.  That is enough to plead Defendant's required actus reus.

2  Given that Plaintiff has pled a violation of the first, second, and third clauses of

3  section 631(a) because of Defendant's search bar provider's activities and third party data

4  collectors, which Defendant "aids, agrees with, employs, or conspires with," Plaintiff has

5  stated a claim under the fourth clause of section 631(a).  (FAC ¶¶ 14-50, 82.)

**c.    The Court Should Follow the Decisions that Have Recognized Sufficient Pleading of Liability Against Website Owners/Operators Under the Fourth Clause of Section 631(a).**

9  The Court should follow the decisions that have recognized sufficient pleading of

10  civil liability claims under the fourth clause of section 631(a) against website

11  owners/operators.  *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *6 (C.D.

12  Cal. July 31, 2024) (Peace Garnett, J.); *Revitch v. New Moosejaw, LLC*, 2019 WL

13  5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Revitch's claim that Moosejaw violated

14  section 631 ***by helping*** Navistone eavesdrop is therefore not barred as a matter of law.")

15  (emphasis added).  As was the case in *Revitch*, the defendant website merchant "violated

16  section 631 by ***enabling*** [a third party's] wrongdoing."  *Revitch*, 2019 WL 5485330, at *2

17  (emphasis added); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal.

18  2021) (Holcomb, J.) ("This Court agrees with the court's reasoning in *Moosejaw*: a

19  conversationalist is betrayed equally by a wiretapper ***and by the willing conversation***

20  ***participant who surreptitiously allows that third party to wiretap***.  Yoon has therefore

21  stated a claim against Lululemon for violation of § 631(a)[iv].").  Notably, *Revitch*'s

22  holding that the fourth clause of section 631(a) focuses on "enabling" conduct is based on

23  *Revitch*'s citation of *Ribas*, 38 Cal. 3d at 363.  *Revitch*, 2019 WL 5485330, at *2 (citing

24  *Ribas* for its explanation that conversation participants may be liable under § 631 because

25  § 631 "was designed to 'protect a person placing or receiving a call from a situation where

26  the person on the other end of the line ***permits*** an outsider to tap his telephone *or listen* in

27  on the call' ") (first emphasis added) (quoting *Ribas*, 38 Cal. 3d at 363 (second emphasis

28  in original) (quoting H. Lee Van Boven, Comment, *Electronic Surveillance in California:*

*A Study in State Legislative Control*, 57 Cal. L. Rev. 1182, 1202 n.120 (1969) (quoting Digest of A.B. 860 (As Amended, Apr. 20, 1967), by Assembly Speaker Jesse M. Unruh, at 1, Apr. 25, 1967, 1967 Regular Sess.))).  If the Legislature's goal was to protect participants of a telephone call from the conduct of one of the participants who "permits" an outsider to listen in on the call, then the fourth clause of section 631(a) should be construed with this goal in mind.

**C.    The FAC Plausibly Alleges that Defendant Violated Section 638.51 of the California Penal Code.**

**1.    An IP Address Constitutes a Consumer's Personal Information in California.**

Defendant implicitly seems to argue that collecting a website user's IP address is not actionable under California law because no reasonable expectation of privacy exists therein.  Defendant is wrong.

Over the past decade, California law has expressly recognized a legally protected privacy interest in IP addresses.  For example, in 2015, California's Legislature enacted California's Electronic Communications Privacy Act ("CECPA"), Cal. Penal Code § 1546 *et seq.*, which precludes the government from compelling internet service providers to provide a user's IP addresses without a warrant or other limited exception.  (Penal Code §§ 1546(d) & (h), 1546.1(a)(1) & (b), 1546.4(a) (2015) (stating that government's violation of CECPA by compelling production of or access to IP address of individual or device participating in electronic communication without warrant or other limited exception can result in suppression of evidence at trial).

More recently, in 2018, the California Legislature enacted into law the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, which recognizes that "[i]dentifiers such as a[n] Internet Protocol address," constitute a consumer's "personal information," (Civ. Code § 1798.140(v)(1)(A)).  The CCPA's recognition supports a reasonable expectation of privacy in such personal information. *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal.

2022) ("plaintiffs allege that Google sells sensitive personal information ***such as plaintiff's IP address***….Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy.  Not so.  First, ***such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information***.") (emphasis added) (citing Civ. Code § 1798.140).    Notably, Defendant's analysis omits such decision and section 1798.140(v)(1)(A), which identifies an IP address as a consumer's "personal information."

In addition, the CCPA, which provides consumers with the right to know when a business is collecting personal information about them, (Cal. Civ. Code § 1798.100(a)), also provides:

> "A business' collection, use, ***retention***, and sharing of a consumer's personal information shall be reasonably necessary and proportionate to achieve the purposes for which the personal information was collected or processed, or for another disclosed purpose that is compatible with the context in which the personal information was collected, and not further processed in a manner that is incompatible with those purposes."

(Cal. Civ. Code § 1798.100(c)) (emphasis added).  And, the CCPA provides a consumer with "the right to request that a business ***delete*** any personal information about the consumer which the business has collected from the consumer," (Cal. Civ. Code § 1798.105(a) (emphasis added)), and "the right, at any time, to direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information," *i.e.*, "the right to opt-out of sale or sharing," (Cal. Civ. Code § 1798.120(a)).  If a consumer can exercise such opt-out right after the consumer's personal information has already been collected by a business, then the CCPA indicates the Legislature's intent that businesses cannot ***retain*** personal information like a consumer's IP address in perpetuity if:  (i) the retention is not compatible with purposes deemed appropriate by the Legislature; or (ii) a consumer opts-out of such retention.

Clearly, Plaintiff has opted-out of such retention here. Indeed, any confusion about Plaintiff's basis was dispelled when Plaintiff actually filed suit. *Cf. Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 730 (N.D. Cal. 2024) (initial complaint's allegations provided CLRA notice for purposes of amended complaint); *Prescott v. Bayer Healthcare LLC*, 2020 WL 4430958, at *9 (N.D. Cal. July 31, 2020) (same). Defendant is mistakenly acting as though it can ignore Plaintiff's opt-out with impunity.

### a.      Multiple Decisions Support Plaintiff's Position.

Multiple federal or California decisions support that collection of IP addresses violates § 638.51. For example, the Court should follow the persuasive reasoning of *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1050, which involved, *inter alia*, the collection of geolocation data by website data collectors.[4] *Id.* at 1037. *Greenley* explained:

> "***Today, pen registers take the form of software***. As a result, private companies and persons have the ability to hack into a person's telephone and gather the same information as law enforcement. Perhaps for this reason, ***the California legislature does not limit its prohibition on installing pen registers to law enforcement***. *Compare* Cal. Penal Code § 638.51 ("[A] *person* may not install or use a pen register ..." (emphasis added)), *with id.* § 638.52 ("A *peace officer* may make an application to a magistrate for an order ... authorizing ... the installation and use of a pen register ..." (emphasis added))."

684 F. Supp. 3d at 1050 (first and second emphasis added). *Greenley* added:

> "Moreover, the Court cannot ignore the expansive language in the California Legislature's chosen definition. The definition is specific as to the type of data a pen register collects—'dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic

---

[4] As noted by *Greenley*, "courts have found that … the geolocation of the communicating parties are not the 'contents' of a communication under Section 631." *Greenley*, 684 F. Supp. 3d at 1051 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (finding that mere geolocation data is not the "contents" of a communication under the federal Wiretap Act).

communication is transmitted,' but it is vague and inclusive as to the form of the collection tool—'a device or process.' *See* Cal. Penal Code § [6]38.50(b). ***This indicates courts should focus less on the form of the data collector and more on the result***. Thus, the Court applies the plain meaning of a 'process' to the statute. A process can take many forms. ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'*** (Am. Compl. ¶¶ 67, 74.) ***Thus, the Court rejects the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a 'pen register.'***"

*Id.* (emphasis added). Like the allegations at issue in *Greenley*, the FAC's allegations allege that numerous spyware on the Website engage in precisely the same type of unique "fingerprinting" to de-anonymize visitors to the Website. (FAC ¶¶ 61-71.)

Notably, *Greenley*'s conclusion that tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51 has been cited with approval by two recent federal court decisions. *Shah v. Fandom, Inc.*, - F. Supp. 3d -, 2024 WL 4539577, at *4 (N.D. Cal. Oct. 21, 2024) ("Based on the expansive statutory definition of a pen register, 'tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51.'") (quoting *Moody*, 2024 WL 3561367, at *2) (citing *Greenley*, 684 F. Supp. 3d at 1050).

In addition, two federal district court decisions recently denied motions to dismiss civil claims alleging violations of § 638.51 based upon websites using tracking software. *Shah*, 2024 WL 4539577, at *2-*6; *Moody*, 2024 WL 3561367, at * 2-*4. *Shah* held that "the Trackers operate as a 'process' under the meaning of the statute." *Id.* at *2. *Shah* also held that "the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information." *Id.* at *3. "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id.* Although *Shah* considered the same legislative materials cited by Defendant here, *Shah* noted, "Nowhere in those materials did the Legislature state an intent to add a statutory requirement limiting pen registers to those traditional [telephone-based] forms."

*Id.* at \*4 n.2.  "All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to Fandom's website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Id.* at \*3.  "Giving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies." *Id.* at \*4 (citing cases).

Similarly, *Moody* held that "software may qualify as a pen register or trap and trace device under California law, at least at the motion to dismiss stage." *Id.* at \*2 ("Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement."); *id.* at \*3 ("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51.").

### 2.    Defendant's Consent Argument Is Without Merit.

Defendant's co/nsent argument is without merit for the reasons set forth above in section II.B.3, *supra*.  In addition, if anything, the specific use of an Internet user's IP address for the user's computerized device implicitly agreed upon by the user is the disclosure of the device's IP address solely to communicate with the website visited by the Internet user.  Any such limited and narrow consent to the use of the Internet user's IP address, however, is limited to communicating with the website that the user wants to visit.  Users do not expect the IP address on their device to be collected by surreptitious tracking software code embedded into the websites that they visit with the goal of de-anonymizing such website visitors so that their website history can be tracked and monetized by those involved in the identity resolution industry.

### D.    Leave to Amend Should Be Granted.

If the Court is inclined to grant the Motion, this Court should grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); Fed. R. Civ. P. Rule 15(a)(2).

1   Dated:  November 15, 2024     PACIFIC TRIAL ATTORNEYS, P.C.

2                          By: _/s/ Scott J. Ferrell___

3                          Scott. J. Ferrell
Attorney for Plaintiff

4                          SILVIA GARCIA

OPP'N TO MTD FAC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief complies with the Standing Order for Civil Cases Assigned to Judge Birotte requiring that a memorandum of points and authorities in opposition to motions must not exceed 25 pages. (Doc. 15 at 6:13-14.)

Dated: November 15, 2024

_/s/ Scott J. Ferrell_
Scott J. Ferrell