**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell (Bar No. 202091)
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATE DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA GARCIA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>WPROMOTE, LLC, a California entity d/b/a WPROMOTE.COM,<br><br>                    Defendant. | Case No. 2:24-cv-07780-AB-MAA<br><br>**PLAINTIFF'S OBJECTION TO DECLARATION OF DANA GAUSEPOHL IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>[Pl.'s Memorandum of Points and Authorities filed concurrently herewith]<br><br>Date:          December 6, 2024<br>Time:          10:00 a.m.<br>Courtroom:     7B<br>Judge:          Hon. André Birotte Jr. |

**A.      The Declaration of Dana Gausepohl Including Exhibits 1-4 Attached Thereto
          Is Objectionable.**

Defendant relies upon the Declaration of Dana Gausepohl October 23, 2024
("Gausepohl Declaration") in support of its Motion to Dismiss Complaint Pursuant to Fed.
R. Civ. P. 12(b)(6), which attaches exhibits 1-4 ("Exhibits 1-4").  (Gausepohl Decl. ¶¶ 1-10
& Exs. 1-4; Doc. 18-1; PageID #210-#270.)

The Court cannot take judicial notice of such extrinsic evidence.  *See Gerritsen v.
Warner Bros. Enter. Inc.*, 112 F. Supp. 3d 1011, 1030-31 (C.D. Cal. 2015) (Morrow, J.)
("the court declines to take judicial notice of information published on private websites")
(citing cases).  "Facts subject to judicial notice are those which are either 'generally known
within the trial court's territorial jurisdiction' or 'can be accurately and readily determined
from sources whose accuracy cannot reasonably be questioned.'"  *Naddeo v. Plestis Studios,
Inc.*, 2020 WL 10575048, at *2 (C.D. Cal. Nov. 17, 2020) (Olguin, J.) (citing Fed. R. Evid.
201(b)(1)-(2)).  Exhibits 1-4 to the Gausepohl Declaration are not "generally known within
the trial court's territorial jurisdiction," nor can such alleged screenshots of Defendant's
website at   https://www.wpromote.com/   (the "Website") "be accurately and readily
determined from sources whose accuracy cannot reasonably be questioned."

In addition, Defendant does not rely upon the incorporation by reference doctrine as
the basis for relying upon the Gausepohl Declaration and/or Exhibits 1-4.  Assuming
*arguendo* that Defendant did rely upon such doctrine, such reliance would be improper for
several reasons.

First, the incorporation by reference doctrine does not apply here because the First
Amended Complaint ("FAC") in the instant action does not "necessarily depend" on either
the Gausepohl Declaration and/or Exhibits 1-4.  "Incorporation by reference is proper only
the where the claims ***necessarily depend*** on the exhibit in question." *Castaneda v. Flagstar
Bank, FSB*, 2021 WL 1232463, at *3 (C.D. Cal. Feb. 1, 2021) (Fitzgerald, J.) (emphasis
added) (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)).

1

At most, Defendant's extrinsic evidence merely creates a defense to the FAC's allegations.  As the Ninth Circuit in *Khoja* has explained:

> "[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.  Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts. Without that opportunity to respond, the defendant's newly-expanded version of the complaint—accepted as true at the pleading stage—can easily topple otherwise cognizable claims. Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim."

*Id.* at 1002-03 (internal citations omitted).  *Khoja* further explained:

> "The overuse and improper application of judicial notice and the incorporation-by-reference doctrine … can lead to unintended and harmful results.  Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery.  If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief.  Such undermining of the usual pleading burdens is not the purpose of . . . the incorporation-by-reference doctrine."

1    *Id.* at 998-99 (internal citations omitted).  The Court is bound to follow *Khoja*.

2         Second, assuming *arguendo* that the Court considers such extrinsic evidence, such

3    evidence raises serious factual questions that should not be decided as a matter of law.  The

4    relevance of such purported evidence is ambiguous.  *Rouse v. Conner*, 2012 WL 2589240,

5    at \*1 (N.D. Cal. July 3, 2012) (Hamilton, J.) ("the court may deny a request for judicial

6    notice of facts that are not relevant to the question at issue") (citing *Santa Monica Food Not*

7    *Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) and *Flick v. Liberty*

8    *Mut. Fire Ins. Co.*, 205 F.3d 386, 393 n.7 (9th Cir. 2000)).

9         In particular, paragraph 60 of the FAC alleges in relevant part:

10        60.    In addition, **the Website is designed so that a visitor can navigate**

11   **through the various webpages of the Website without having to make any cookie-**

12   **related preferences.  In other words, a visitor to the Website can read the content**

13   **of various webpages without having to make any cookie-related preferences.**"

14   (FAC ¶ 60) (emphasis added).  Thus, Plaintiff has alleged that she was able to navigate

15   through the Website's webpages and use the Website's search function without having to

16   make any cookie-related preferences, contrary to Defendant's inference to the contrary.

17   Indeed, the Gausepohl Declaration itself effectively concedes this point by averring:

18   •   "This banner will follow any user of the website ("user or browser") wherever they

19       browse on the WPromote website…."  (Gausepohl Decl. ¶ 4; Doc. 18-1; Page ID

20       #211.)

21   •   "Browsers cannot access the WPromote website search function without seeing the

22       banner."  (Gausepohl Decl. ¶ 8; Doc. 18-1; Page ID #211.)

23        If it was technically impossible to use the search function on the Website without

24   making a cookie-related preference from the cookie banner, then surely the Gausepohl

25   Declaration would have made such averment.  Its omission speaks volumes.

26        In addition, Defendant has failed to point to anything in its alleged cookie banner

27   attached as Exhibits 1-2 to the Gausepohl Declaration stating that a Website visitor's use of

28   the search bar function on its Website would be intercepted, read by, and/or otherwise used

by unrelated third party data collectors having no corporate affiliation with Defendant. Indeed, Defendant does not even cite to any specific portion of its alleged online Privacy Policy, which is attached as Exhibit 3 to the Gausepohl Declaration, disclosing such interception of a Website visitor's search terms entered in the Website's search bar function.

Furthermore, assuming *arguendo* that Defendant's "Privacy Policy" is even relevant to Defendant's Motion to Dismiss, it raises serious factual questions that should not be decided as a matter of law. For example, it is black letter law that electronic contracts of adhesion must be evaluated for their conspicuousness to determine whether a consumer has assented to it. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). "In the absence of actual knowledge, a reasonably prudent user must be on constructive notice of the terms of the contract for a browsewrap agreement to be valid." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019). "Users are put on constructive notice based on the conspicuousness and placement of the terms and conditions, as well as the content and overall design of the app." *Id.*

Notably, the underlined hyperlink that a user can click at the word "here" in Defendant's cookie banner displayed in Exhibits 1 and 2 to the Gausepohl Declaration is in the color gray as is the surrounding text of the cookie banner including the underlining used for the hyperlink. Notably, Defendant has failed to cite any case authority indicating that the color gray indicates the existence of a hyperlink. Plaintiff submits that such color is inconspicuous especially when there is no color contrast with the surrounding text. Indeed, the California Court of Appeal recently held, "In the computing world, a hyperlink is a word, phrase, or image—typically underlined or ***in blue font***—that the user can click on to jump to a new document or a new section within the current document." *Sellers v. Just Answer LLC*, 73 Cal. App. 5th 444, 452 n.2 (2021) (emphasis added). The reference to "blue font" in *Sellers* is significant. Indeed, in *Sellers*, the Court of Appeal noted that the online merchant's "hyperlink to the terms of service ***is underlined, but it is not set apart in any other way that may draw the attention of the consumer***, such as with ***blue text*** or capital letters." *Sellers*, 73 Cal. App. 5th at 481 (emphasis added).

Indeed, the Ninth Circuit has recognized the significance of a hyperlink that is "underlined" in "**blue, contrasting text**," coupled together with other indicia. *Nguyen*, 763 F.3d at 1178 (emphasis added) (quoting *PDC Labs., Inc. v. Hach Co.*, 2009 WL 2605270, at *3 (C.D. Ill. Aug. 25, 2009) ("Terms [and Conditions of Sale] were hyperlinked on three separate pages of the online ... order process in **underlined, blue, contrasting text**.") (emphasis added)); *Nguyen*, 763 F.3d at 1178 ("As in *PDC*, the checkout screens here contained "Terms of Use" hyperlinks in underlined, **color-contrasting text**.") (emphasis added). The Ninth Circuit noted that in *PDC Labs.*, "the federal district court held that '*[t]his contrasting text is sufficient to be considered conspicuous*,' thereby placing a reasonable user on notice that the terms applied." *Nguyen*, 763 F.3d at 1178 (emphasis added) (quoting *PDC Labs., Inc.*, 2009 WL 2605270, at *3)).

Given that Defendant's Memorandum is completely bereft of any analysis as to the conspicuousness of Defendant's hyperlink to its purported Privacy Policy, it is entirely premature for the Court to decide such factual issue as a matter of law.

Furthermore, with respect to Plaintiff's claim under section 638.51 of the California Penal Code, it is worth noting that the FAC alleges in paragraph 59:

> "59. Plaintiff's investigation of the Website via a computer expert has determined that visitor data is harvested and shared with third-party services *immediately upon webpage loading, preceding any opportunity for visitors to consent to or decline the Website's privacy policy or cookie banner*."

(FAC ¶ 59) (emphasis added). Needless to say, if Plaintiff's IP address, which is Plaintiff's "personal information" under California statutory law, California Consumer Privacy Act of 2018 ("CCPA"), (Civ. Code § 1798.140(v)(1)(A)) (stating that "[i]dentifiers such as a[n] Internet Protocol address" constitute a consumer's "personal information"), was collected by Defendant and its third-party partners *before* Plaintiff had a reasonable opportunity to either accept or decline the options set forth in such cookie banner, then how can such circumstances comport with the "prior consent" requirement of consent under California law as interpreted by the Ninth Circuit? *See Javier v. Assurance IQ, LLC*, 2022 WL

1744107, at *2 (9th Cir. May 31, 2022) (interpreting section 631(a) of the California Penal Code as requiring "prior consent," and predicting that the California Supreme Court would interpret such statute in such manner) ("Based on these statements by the California Supreme Court, we conclude that the California Supreme Court would interpret Section 631(a) to require the ***prior consent*** of all parties to a communication.") (emphasis added).

Finally, in order to consider the Gausepohl Declaration including Exhibits 1-4 attached thereto in deciding Defendant's Motion to Dismiss, which is predicated solely upon Federal Rule of Civil Procedure 12(b)(6), the Court would be required to convert such motion into a motion for summary judgment under Fed. R. Civ. P. 12(d). *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Thus, Defendant's assumption that the Court can consider the Gausepohl Declaration including Exhibits 1-4 attached thereto without converting its Motion to Dismiss into a summary judgment motion is erroneous.

Dated:  November 15, 2024          PACIFIC TRIAL ATTORNEYS, P.C.


By: _/s/ Scott J. Ferrell_
Scott. J. Ferrell
Attorneys for Plaintiff
SILVIA GARCIA